(77 N. W. Rep. 615.)

---

E. C. CARRUTH *vs.* E. C. TAYLOR.

Opinion filed November 28, 1898.

**Final Order in Habeas Corpus Not Appealable Order.**

Chapter 20 of the Code of Criminal Procedure, and section 5626 of the Code of Civil Procedure, regulating appeals, considered and construed. *Held*, that the procedure under the habeas corpus act is not governed by that regulating the special proceedings enumerated in chapter 39 of the Code of Civil Procedure; and, consequently, it is *held* that a final order in a habeas corpus case is not an appealable order, as a final order affecting a substantial right made in a special proceeding.

**Supreme Court Original Jurisdiction.**

*Held*, further, that, while it is competent for the legislature to regu-

late and reasonably restrict the privileges of habeas corpus, it cannot by statute wholly deprive this Court, in the exercise of its original jurisdiction, of the right to issue the writ.

### Procedure for Review of Habeas Corpus.

*Held*, further, when liberally construed, that section 8651, Revised Codes, as amended by chapter 85 of the Session Laws of 1897, will permit a petitioner who has been remanded by the District Court to apply to this Court for the writ, and thereupon this Court will be authorized to reinvestigate and redetermine the case.

### Title of Habeas Corpus Proceedings.

*Held*, further, that inasmuch as the state is a necessary party to a habeas corpus proceeding, good practice requires that the state should be made a party, in entitling the papers in such proceeding. Bartholomew, C. J., dissenting.

Appeal from District Court, Grand Forks County; *Fisk*, J.

Petition of E. C. Carruth for a writ of habeas corpus directed to E. C. Taylor, sheriff. Judgment remanding petitioner, and he appeals.

Dismissed.

*Burke Corbett*, for appellant.

The order denying the discharge of appellant was appealable under sections 5603 and 5626, Revised Codes. *Winton* v. *Knott*, 7 S. D. 159, 63 N. W. Rep. 783. In re Hammill, 9 S. D. 390, 69 N. W. Rep. 577; In re Fawkes, 53 Fed. Rep. 13. It is the right and duty of a Court before the removal of one accused to a distant forum for trial to look into the indictment so far as to be satisfied that an offense is charged and that it is such an offense as may be lawfully tried in the forum to which it is claimed the accused should be removed. *United States* v. *Horner, 44* Fed. Rep. 667; In re Dana, 7 Ben. 1; In re Buell, 3 Dill. 116, Fed Cases No. 2102. The sufficiency of the indictment to charge a public offense and one triable in the jurisdiction where presented is not alone for the Court in such jurisdiction. In re Corning, 51 Fed. Rep. 205; In re Terrell, 51 Fed. Rep. 213; In re Fawks, 49 Fed. Rep. 50; In re Fawks, 53 Fed. Rep. 13; In re Doig, 4 Fed. Rep. 193; In re Palisser, 136 U. S. 257, 10 Sup. Ct. Rep. 1034; *Horner* v. *U. S.*, 142 U. S. 207, 12 Sup. Ct. Rep. 407. And the procedure is by habeas corpus. In re Greene, 52 Fed. Rep. 104; *United States* v. *Rogers*, 23 Fed. Rep. 658.

*E. S. Allen*, States Attorney (*R. N. Stevens* of counsel), for respondent.

WALLIN, J. This record discloses the following facts: The petitioner, E. C. Carruth, was arrested in the County of Grand Forks upon a warrant charging him with the offense of criminal libel. Said arrest was made by one E. C. Taylor, who was the sheriff of Burleigh county, and who acted in making the arrest under and by virtue of said warrant, which warrant was issued by a justice

of the peace of Burleigh county, and was regular upon its face. Subsequent to said arrest, and upon an application therefor made by the petitioner to the District Court for Grand Forks county, the writ of habeas corpus issued out of said Court, commanding said sheriff to make return to said writ, and bring the petitioner before said Court, together with the cause of his detention. In obedience to the writ the petitioner was brought before said Court, and the cause of his arrest was there inquired into and considered; and that Court determined that the petitioner was not unlawfully restrained of his liberty, and entered an order remanding the petitioner to the custody of the sheriff. The petitioner has attempted to appeal to this Court from said order, and, with that end in view, has served a notice of appeal upon the state's attorney for Grand Forks county, and upon the attorney for said sheriff, and has filed such notice with the clerk of the District Court for Grand Forks county. The petitioner also filed an undertaking in the usual form for the costs and damages incident to such appeal, in the sum of $250. In addition to said undertaking for costs, the petitioner filed with the clerk of the District Court an undertaking, in the nature of a stay or surpersedes, in the sum of $100, which undertaking was filed in conformity to an order of said Court staying the performance of the remanding order. Pursuant to said notice of appeal and proceedings, the clerk of the District Court has transmitted the entire record to this Court. In the view we have taken of the case, it will be unnecessary to set out the grounds upon which the petitioner claims that he is entitled to be discharged from custody. Respondent's contention is that this Court is without authority to review the adjudcation of the District Court which culminated in the remanding order. If the respondent's contention is sustained,—and we think it must be,—it follows that this Court is without authority to determine any of the questions touching the merits appearing in the record.

The notice of appeal is entitled as follows: "E. C. Carruth, Petitioner, vs. E. C. Taylor, Defendant." Assuming that an appeal will lie, this is an irregularity, inasmuch as the proper parties in habeas corpus are the state and the petitioner. But the notice was served upon the state's attorney of Grand Forks county, which officer, for the purposes of habeas corpus, represents the state in the court below. Rev. Codes, § 8669. As the petition is regular in other respects, it can be upheld as sufficient in substance; and this minor matter is adverted to only for the purpose of indicating the proper title of the habeas corpus proceeding, and also for the purpose of calling attention to the important consideration that the state, as such, in issuing his prerogative writ, is a party to the proceeding.

It is elementary that the right of appeal is a statutory right, and this rule is especially applicable in habeas corpus cases, as many states have held that the decisions in this class of cases are not reviewable under a general law allowing an appeal from all final judgments. See *Howe* v. *State,* 9 Mo. 403; Ex parte Jilz, 64 Mo. 205. In Michigan the rule is that in habeas corpus an order dis-

charging the petitioner is not reviewable on writ of error. *People v. Conant,* 59 Mich. 565, 26 N. W. Rep. 768. The general rule is indicated by the language of the Court in the case last cited. The Court say, "We know of no statute or practice allowing the people the right to bring error for the purpose of obtaining a review of the proceedings in the Circuit Court when the prisoner has been discharged, in this class of cases." In Iowa, where the right of appeal in this class of cases is expressly conferred by statute, it is held that an order discharging the petitioner is not appealable. In *State v. Kirkpatrick,* 54 Iowa, 373, 6 N. W. Rep. 588, the Court say, "In a habeas corpus proceeding an order of discharge made by the Court cannot be superseded pending an appeal." It must be conceded, however, that in some states the right of appeal has been expressly granted by the legislature. This is true of the State of New York. In other states it has been held, as in Minnesota and South Dakota, that a final order in a habeas corpus proceeding is appealable under a statute which gives an appeal from a final order affecting a substantial right made in a special proceeding. See Rev. Codes, § 5626; Comp. Laws, § 5236; *State v. Buckham,* 29 Minn. 462, 13 N. W. Rep. 902; *Winton v. Knott* (S. D.) 63 N. W. Rep. 783; In re Hammill (S. D.) 69 N. W. Rep. 577. Under the Minnesota and South Dakota cases, construing a statute indentical in its language with section 5626 of the Revised Codes, the appellant's counsel claims that the order of the District Court in this case is an appealable order. The citations of counsel are squarely in point, and it must be conceded that they furnish a strong support for the appellant's contention. It would clearly be the duty of this Court to rule in accordance with this authority, unless this Court, after mature and conscientious deliberation, shall be convinced that to yield its assent to the rule would operate practically to subvert constitutional safeguards and the fundamental rights of the citizen. We do not think that the legislature of this state ever intended to give an appeal to either party in a habeas corpus case, nor do the cases last cited do more than to declare in arbitrary terms the contrary rule. The matter seems to have been taken for granted by the learned Courts whose decisions are cited. In *State v. Buckham* the Court say: "A proceeding in habeas corpus is a special proceeding, not only because it is not an ordinary civil action, but because it is so expressly classified in our statutes." It is true that this proceeding is not a civil action, nor is it a criminal action; but the argument that the proceeding is classified as a special proceeding cannot be urged in this jurisdiction, because such is not the fact. The habeas corpus statute in this state is embodied in the Code of Criminal Procedure, and constitutes chapter 20 of that Code. Rev. Codes, §§ 8648, 8688. The first section of that Code is as follows: "This act shall be known as the Code of Criminal Procedure of the State of North Dakota." Rev. Codes, § 7740. The same classification was made in the Compiled Laws of the Territory of Dakota. Comp. Laws, § 7025. This Court has, how-

ever, repeatedly ruled that the mere fact that a proceeding in court is neither a civil action nor a criminal action is not necessarily decisive of the question of whether it shall be classified as a special proceeding, and hence be governed by the law and the procedure of special proceedings proper. *State* v. *Davis*, 2 N. D. 461, 51 N. W. Rep. 942; *Myrick* v. *McCabe*, 5 N. D. 422, 67 N. W. Rep. 143; In re Eaton, 7 N. D. 269, 74 N. W. Rep. 870. In the case last cited this Court said: "The Davis case is a precedent which commits this Court to the theory that a remedial proceeding in court, which is neither a civil nor a criminal action, need not necessarily be classed as a special proceeding for all purposes. We are still of the opinion that this theory, if maintained, will tend to promote the orderly administration of the law, and thereby promote the ends of justice." Upon the authority of these cases, it becomes the duty of this Court, therefore, to determine whether the habeas corpus act, consisting of 40 sections of the Code of Criminal Procedure, and embracing a full and comprehensive regulation of the writ in all of its known functions, is to be grouped with special proceedings proper. If it is, it follows, under the statute, that, except as otherwise provided in the act, the rules of procedure and practice which govern in civil actions must be applied to habeas corpus proceedings. Rev. Codes, § 6128. While it is true that habeas corpus has been denominated a "proceeding of a civil nature," and doubtless this is the better scientific view, yet this does not, in our opinion, necessarily imply that its procedure shall be governed by the procedure regulating special proceedings or civil actions in a state where the statute governing the writ makes necessary a different procedure. In this jurisdiction chapter 39 of the Revised Codes embraces provisions regulating certain remedial writs, viz: the writs of certiorari, mandamus, and prohibition, and nothing else is contained in said chapter. In our judgment, these provisions of the Code, when considered in connection with the classification of the writ of habeas corpus with criminal proceedings, is enough to show that the lawmaker deliberately removed the procedure of the writ from that controlling special proceedings. If this construction of the statutes is the true one, it follows that a final order in a habeas corpus proceeding either remanding or discharging the petitioner is not a final order in a special proceeding, and hence is not appealable as such under section 5626, Rev. Codes. That statute does not discriminate by giving an appeal to one party to a special proceeding, and withholding it from the other, and hence, if this proceeding is governed by this statute, an appeal would lie in behalf of the state from an order discharging the petitioner; and it was distinctly held in *State* v. *Buckham*, 29 Minn. 462, 13 N. W. Rep. 902, that an appeal would lie on the part of the state under the statute allowing an appeal from a final order in a special proceeding. In its opinion in that case the Court uses this language: "If, as is alleged in the case at bar, a person imprisoned for crime is wrongfully discharged in habeas corpus proceedings, the state is the aggrieved

party whose substantial right is affected." But section 8672 of the habeas corpus statute is as follows: "No person who has been discharged by the order of the court or judge upon habeas corpus can be again imprisoned or kept in custody for the same cause except in the following cases. The exceptions found in the several subdivisions of this section have no application to the case at bar, and hence it is unnecessary to quote them here. Under this section a petitioner who has been once discharged by habeas corpus cannot lawfully be kept in custody for the same cause, unless his case falls within one of the exceptions stated in said section. This provision is squarely opposed to the theory that the petitioner can, after his discharge, be kept in custody on the same charge under any circumstances whatever, other than those specified in this section. This beneficent provision is of the very essence of the relief by habeas corpus, and the decided weight of judicial opinion is, in the absence of a statute, that a discharge under the writ, whether properly made or not, cannot be reviewed in any manner. As has been seen, this was the holding in the cases from Michigan, Missouri, and Iowa already cited. See, to the same effect, *State* v. *Grottkau*, 73 Wis. 589, 41 N. W. Rep. 80, 1063. As our appeal law is taken literally from the statutes of Wisconsin, it is quite pertinent to the question under discussion to note the fact that in that state habeas corpus proceedings, when reviewable at all, are brought up either by certiorari or writ of error, thereby ignoring the appeal law. *State* v. *Smith*, 65 Wis. 93, 26 N. W. Rep. 258, and *Wright* v. *Wright*, 74 Wis. 439, 43 N. W. Rep. 145. At common law the rule was well settled that, while a remanding order was not res adjudicata, an order for a discharge was final. Church, Hab. Corp. p. 520, and cases cited.

But the habaes corpus statute in this state further provides as follows: "Any person who knowing that another has been discharged by order of a competent judge or tribunal on a habeas corpus, shall, contrary to the provisions of this chapter, arrest or detain him again for the same cause which was shown on the return of such writ, shall forfeit five hundred dollars for the first offense and one thousand dollars for every subsequent offense." Rev. Codes, § 8685. In an action brought to recover this penalty, for example, against an officer who knowingly, and after an order of discharge, continued to hold the petitioner in custody upon the same charge, it would be no defense, in our judgment, to plead that he held the prisoner for some reason other than those enumerated in chapter 20 of the Criminal Code. Until the officer could point to a repeal of the provision of chapter 20, his defenses would be confined to the exceptional cases stated in section 8672 of that chapter. It is not contended that any of the provisions of chapter 20 have ever been expressly repealed. If repealed, such repeal must have resulted from the enactment of some later statute so repugnant to the habeas corpus act that the two cannot stand to-

gether and both be enforced. It is elementary that repeals by implication are not favored.

We now call attention to the fact that the law governing appeals from the District Court in civil actions and special proceedings, if applied to the writ of habeas corpus, would in its practical operation, necessarily defeat the chief purpose of the writ. Section 5619, Rev. Codes, provides that when " the state * * * shall take an appeal service of the notice of appeal shall perfect the appeal and stay the execution or performance of the judgment or order appealed from and no undertaking need be given; but the Supreme Court may on motion require sureties to be given in such form and manner as it shall in its discretion prescribe as a condition of the further prosecution of the appeal." Under this section, if held to be applicable to habeas corpus, a party who has been adjudged to be illegally imprisoned by a court of competent jurisdiction, could despite such adjudication, be continued in custody upon the same charge, and that, too, without any indemnity whatsoever. If such were possible, it would require only a notice of appeal, emanating from the state's attorney, to secure the continued incarceration of the petitioner for an indefinite period. Such a result would be so monstrous a perversion of the "liberty writ," that this Court cannot hold that it was ever intended by the legislature to make the law governing appeals applicable to a habeas corpus case; and, before we should hold that an order of discharge could be reviewed in any manner, some statute must be pointed out authorizing such a review in terms. There is at present no such statute in this state. We fully recognize the fact that an order remanding the petitioner in a habeas corpus case cannot, under our construction of the statute, be reviewed on appeal. But we hold that the practical effect of our construction of the appeal law is not to deny the citizen the full benefits of habeas corpus. There are other tribunals whose duty and right it is to take jurisdiction and reinvestigate the question after the District Court has decided the matter and remanded the petitioner. Where an application is made to this Court in such case, the statute allows this Court, or a judge thereof, to order the writ to issue, and make the same returnable before any District Court or judge thereof within the state; or this Court, at its election, can take jurisdiction, and reinvestigate the original cause of imprisonment. See chapter 85, Sess. Laws 1897. At common law, as has been seen, an order in habeas corpus proceedings remanding the petitioner to custody is not res adjudicata. The first adjudication at common law was not a bar to another inquiry upon the same state of facts. It is well settled that, in the absence of restrictive statutes, a prisoner is entitled to exhaust the entire judicial authority of the state courts and of the federal courts having authority to act, in his efforts to free himself from unlawful imprisonment. See Church, Hab. Corp. 518, 519. See, also, In re Snell, 31 Minn. 110, 16 N. W. Rep. 692, which is a well-considered case. Under these author-

ities, and under the constitution of this state, a person incarcerated within this state has the unassailable right, except when restricted by some statute, to apply to all courts, for the "liberty writ," which, under the constitution of the state, have jurisdiction in habeas corpus cases. It is, however, well settled that the legislature may regulate the practice, and may place reasonable restrictions upon the exercise of this constitutional right. In re Doll, 47 Minn. 518, 50 N. W. Rep. 607; In re Hammill (S. D.) 69 N. W. Rep. 577. In the case last cited, which was an original application for the writ made to the Supreme Court, the writ was denied because it did not appear that an application had been previously made to the Circuit Court. This was the true ground of the decision, and what was there said concerning the right of appeal was not necessary to the decision of the case, as the right of appeal was not involved. But the right to enact laws regulating and reasonably restricting the use of the writ is well recognized. In the exercise of the right to regulate the procedure, the legislature has enacted chapter 20 of the Code of Criminal Procedure, and that act embraces no provision giving the right of appeal to either the state or the petitioner; but, in lieu of an appeal, the act, in our judgment, has made ample provision under which a prior adverse adjudication may be practically overruled and annulled by a decision of this Court made upon the application of any person unlawfully remanded in the court below.

Section 8651, Rev. Codes, as amended by chapter 85, Laws 1897, declares that the District Courts may issue and determine the writ in behalf of any person "restrained of his liberty in their respective districts." It is manifest that after the District Court has once taken jurisdiction of a habeas corpus proceeding, and fully determined the same upon the merits, such court has rendered itself legally incapable of reinvestigating the case upon the same state of facts. That court cannot review its own deliberate and final adjudications. But the act of 1897 further provides, "When application is made to the Supreme Court, or to a judge thereof, proof by the oath of the person applying or other sufficient evidence shall be required that the judge of the District Court having jurisdiction by the provisions of subdivision 2 of this section is absent from his district or has refused to grant such writ, or for some cause to be specially set forth is incapable of acting, and if such proof is not produced the application shall be denied." The suggestion cannot be indorsed by this Court that the legislature intended by these regulative provisions to curtail the constitutional rights of the citizen to the writ—First, by forbidding him the right to obtain the writ from any of the District Courts of the state except that in whose district he is confined; and, second, by denying him the right to apply to the Supreme Court for the writ in all cases where the District Court has, after hearing the case, remanded him into custody. Any such construction would necessarily operate to render these otherwise valuable provisions of the statute directly

subversive of the citizen's right to the writ, and hence to render the same unconstitutional and void. It goes without saying that all persons in durance vile in this state have a constitutional right to invoke the original jurisdiction of this Court to issue and hear the writ of habeas corpus; nor can the legislature by any enactment wholly deprive this Court of such original jurisdiction in any case. Section 87 of the state constitution especially confers the power upon this Court to issue the writ of habeas corpus. In doing so this Court exercises original, and not appellate, jurisdiction. But we think the restrictions of the statute, when liberally construed, are not repugnant to the constitution of the state. It is true that a provision that deprives all District Courts within the state of the right to issue the writ, except that court in whose district the petitioner is confined, is highly restrictive in its nature; but we think that the same is perhaps a reasonable restriction upon the exercise of a constitutional right, and that seems to be the prevailing judicial view of the question. See cases supra. Upon this feature, see especially In re Doll, 47 Minn. 518, 50 N. W. Rep. 607. Under the restrictions of the statute, but one District Court, or the judge thereof, can take the initial jurisdiction, *i. e.* that in which the petitioner is confined; but it is well settled that regulative restrictions of the constitutional privileges of the writ must receive a liberal interpretation at the hands of the courts, with a view of giving the petitioner the full benefits of his constitutional right to the writ. This rule, we think, would permit a petitioner to apply to the judge of an adjoining district to that in which he is confined, under the circumstances stated in the statute. See section 5179, Rev. Codes. Such a construction would manifestly be favorable to the liberty of the citizen, and would also enlarge the privileges of the writ of habeas corpus which consideration is always kept in view.

In the case at bar, and in all cases where the petitioner, on application to the District Court, has been remanded to prison, we are of the opinion that the constitutional right of the prisoner to the writ is not exhausted by the first remanding order, and that thereafter the petitioner may present his application to this Court, and state therein the fact that he has been remanded to prison by the District Court. This statement would show that no District Court, or judge thereof, without the intervention of this Court, would be capable of further acting in petitioner's behalf; and this, we think, under a liberal construction of the statute last quoted, would be sufficient. The District Court, having taken jurisdiction and fully determined the case, becomes ipso facto incapable of again acting upon the same state of facts; but this circumstance cannot conclude the petitioner. He still has in reserve his privilege at some time of invoking the original jurisdiction of this Court to determine the same matter.

. We hold that no appeal will lie from a final order made in a habeas corpus case, under existing statutes. Whether the legisla-

ture should provide for such appeal as a cumulative remedy is a question of legislative discretion, but we are clear that no legislation can wholly deprive this Court of its right to issue the "liberty writ" in the exercise of its original jurisdiction. The appeal is dismissed.

YOUNG, J., concurring.

BARTHOLOMEW, C. J. (dissenting). I regret that I am unable to agree with my associates in this case. The results that follow from their conclusions are, I believe, more desirable than the results that follow my own conclusions; and I would gladly subscribe to their views, did I not think that the legislation of this state imperatively forbids it. The matter is of so much importance that I deem it my duty to express my views by something further than a formal dissent.

We may start with the general propositions that originally a party who deemed himself unlawfully deprived of his liberty had the right to have the legality of his confinement passed upon by every court in the realm. If remanded by one court, he was at full liberty to petition another, and he could continue this process as long as he could find a court to which to apply. Under this practice the petitioner never asked for an appeal or review in any form. He had a speedier means of reaching the same result. If discharged by any one of the numerous courts to which he could apply, such discharge was, from the origin of the writ, held final. The crown could not appeal, any more than it could when a prisoner was discharged by the verdict of a jury. Hence a review was unknown in habeas corpus cases, and this, too, at a time when a review, if obtained at all, would have been obtained by a writ of error, which is a writ of right, and not an appeal, which is the creature of statute. But this fact, standing alone, establishes nothing. It does not show that a writ of error might or might not have been granted. I have found no English case where the writ has been refused. In the celebrated case of Ashby and White, reported in 14 Howell, St. Tr. 695-888, the matter was discussed at great length. This was in 1704-05, being in Queen Anne's reign. Certain parties had been imprisoned by order of the house of commons for an alleged violation of the privileges of the house. They petitioned the Court of Queen's Bench for a writ of habeas corpus, but on the hearing they were remanded. They then sought by writ of error to bring the matter before the queen in parliament. The house of commons and the house of lords were in direct opposition on the point. Conferences were had, and exhaustive discussions; the commons being determined to keep the parties in confinement. It put forth the argument that the fact that no writ had ever been granted to review habeas corpus proceedings was evidence that none was allowable. In the end the commons petitioned the queen not to grant the writ, while the lords issued an address to the queen, the logic of which never has been, and never can be, answered, in which they urged the immediate issuance of the writ. The queen replied

the same day, saying: "My Lords: I should have granted the writ of error desired in this address; but finding an absolute necessity of putting an immediate end to this session, I am sensible there could have been no further proceeding upon that matter." She forthwith prorogued parliament, and thus, of course, put an end to the imprisonment. There are some dicta in the early English cases to the effect that the writ of error will not lie in habeas corpus cases. City of London, 8 Coke, 121b; *Rex* v. *Trinity Chapel,* 8 Mod. 27. But in these cases, and all others where I find the point mentioned, procedendo, mandamus, and habeas corpus are classed together, and practically for the same reasons, as proceedings that cannot be reviewed by writ of error. But no decision in England has held directly that a writ of error would not lie to review proceedings on habeas corpus, while the house of lords has declared that the writ would lie. In the case of *Yates* v. *People,* 6 Johns. 337-523, it was held (not upon any statute, but purely upon common law grounds) that a writ of error would lie from the court for the correction of errors to the Supreme Court, to review a decision of the latter court in habeas corpus proceedings. This case is very exhaustive. I think I am justified in saying that it involved more research and labor than have been bestowed upon all the cases in the books where the right to review by writ of error or appeal has been denied in habeas corpus cases. True, there was a diversity of opinion in that case, and that diversity continued until the matter was finally settled in New York by express statute giving the right of appeal. Another case decided upon the same grounds and in the same way is Ex parte Lafonta, 2 Rob. (La.) 495. Another full discussion of this question may be found in *Holmes* v. *Jennison,* 14 Pet. 540. I cite these cases simply to show that it has never been the settled law that proceedings upon habeas corpus could not be reviewed by a higher court.

It is true that in this state the writ of error is abolished, and all reviews are by appeal, as provided by statute. The majority opinion cites certain cases to show that, under a general statute allowing appeals from all final judgments, appeals are not allowed in habeas corpus cases. The first case is *Howe* v. *State,* 9 Mo. 690. There the Circuit Court had refused to discharge petitioner, and he appealed. The appeal was dismissed on the ground that the decision was not final, because the petitioner could make another original application to another circuit judge, or justice of the County Court, or justice of the Supreme Court. What that court would have held, had petitioner been discharged, and the state appealed, does not appear. Certainly the judgment would have been final in that case. But as to whether or not an order remanding a prisoner is a final judgment, within the meaning of appeal statutes, seen the opinion of Chief Justice Taney in *Holmes* v. *Jennison,* supra. In Ex parte Jilz, 64 Mo. 205, no question of a right of appeal was involved. That was an original application to the Supreme Court for a writ of habeas corpus. What the Court did hold

was that where the petitioner was discharged the matter became res adjudicata. It is difficult to state the precise condition of the law on this point in Michigan. The majority opinion cites the case of *People* v. *Conant,* 59 Mich. 565, 26 N. W. Rep. 768; and the case holds that the discharge of a party, held upon a criminal charge, on habeas corpus proceedings, is not reviewable on writ of error. *People* v. *Fairman,* 59 Mich. 568, 26 N. W. Rep. 769, is a stronger case on the same point, as that case holds that a writ of error does not lie at common law to review habeas corpus proceedings. In *People* v. *Judge of Calhoun Circuit Court,* 30 Mich. 266, it was held that a writ of error would not issue to review habeas corpus proceedings before a judge at chambers, for the reason that such proceedings were not according to the course of the common law, and it was held that the proper remedy for errors committel in such proceedings was by certiorari. In re Hicks, 20 Mich. 133, the Court said: "They (the petitioners) insist 'that the decision of the court below on the habeas corpus, and the discharge of the parties, is final, and not reviewable in any form. We cannot accede to this view. The constitution has vested this Court with a general superintending control over all inferior courts, and has clothed it with power to issue writs of error, habeas corpus, and other original and remedial writs; and we cannot doubt our authority to review by some mode a decision on habeas corpus, when made by a circuit judge." It would appear that in that state the right to review the proceedings in some manner is unquestioned, except in the single case of the discharge of a person held upon a criminal charge. Other considerations enter into such a case, that I need not stop to discuss. Nor do I think the majority opinion at all strengthened by the citations from Wisconsin. It is true that our general appeal law in civil cases is the same as that of Wisconsin, and it is also true that in that state habeas corpus proceedings are reviewed, not under the appeal law, but by writ of error, and that is because in that state habeas corpus proceedings are classed as criminal in their nature; and in the case cited (*State* v. *Grottkau,* 73 Wis. 589, 41 N. W. Rep. 80, 1063) a writ of error was refused to the state because the Court had held in *State* v. *Kemp,* 17 Wis. 669,—and the ruling had never been questioned or doubted,—that a writ of error would not lie at the suit of the state to reverse a judgment for the defendant in a criminal prosecution; and the Court entered into an extended argument to show that a judgment of discharge on habeas corpus, where the petitioner was charged with a crime, was in no manner different in character.

These are all the cases cited by my associates to establish the proposition that appeals in habeas corpus cases are not permitted under general appeal laws. I submit that only in part do these cases support the proposition. In so far as they do support it, they are based upon statutes that permit appeals from final judgments only.

Hurd, Hab. Corp. § 573, states that, by the current of state author-
ity, decisions in habeas corpus refusing a discharge are not final,
but the party may apply to successive courts; and the reason that
he assigns is that no appeal or writ of error lies from such decisions,
and he cites the cases to support the position. When we turn to the
cases that deny an appeal or writ of error, we find that the reason
assigned is that the decision is not final as the petitioner may re-
new his application. See *Howe* v. *State*, supra; *Hammond* v.
*People*, 32 Ill. 446; Ex parte Thompson, 93 Ill. 89. Thus, the
reasoning moves ever in a circle. It is not strange that legislatures
and courts should break away from it. Again, under the old practice
as stated in *Howe* v. *State* it might happen that a party would
make his application to the Supreme Court of the state, and on
the hearing be remanded, but upon a renewed application before
a justice of the County Court he might be discharged. The dis-
charge would be final, and the Supreme Court would be effectually
reversed by the County Court. Enlightened judicature can hardly
tolerate such a farce, even in the interests of the great personal
liberty writ. As a result the trend of legislation is to limit the
applications for the writ so that it may not be abused, and at the
same time give the right of appeal. Not only has this been done
in New York, but also in federal legislation giving the absolute
right of appeal in habeas corpus cases from the District to the
Circuit Courts, and from the Circuit to the Supreme Court; also,
from territorial Supreme Courts to federal Supreme Court, and
from Supreme Court, District of Columbia, to United States Su-
preme Court. See Rev. St. U. S. §§ 763, 764, 1909; also, Act
March 3, 1885; also, *Roberts* v. *Reilly*, 116 U. S. 80, 6 Sup. Ct.
291; In re Sun Hung, 24 Fed. Rep. 723; Wildenhus' case, 120 U.
S. 1, 7 Sup. Ct. 385. The appeal is also given in Iowa. Code, §
4101. In Vermont, habeas corpus proceedings are reviewed on
exceptions under the general law. In re Cooper, 32 Vt. 253. In
West Virginia, on writ of error under the general law. Ex parte
Mooney, 26 W. Va. 32. In Washington, under the general appeal
law. See annotations to section 732, 2 Hill's Code. In Indiana.
under the general appeal law. *State* v. *Banks*, 25 Ind. 495.

It is conceded by the majority opinion that in Minnesota and South
Dakota, under statutes identical with ours, appeals in habeas cor-
pus are allowed under the general appeal law. But the majority
opinion proceeds to argue with much ability and ingenuity, that
those cases were improperly decided, under the statutes. From that
view I dissent, and this brings us to a more specific examination
of our statutes. Section 5156, Rev. Codes, reads, "An action is an
ordinary proceeding in a court of justice, by which a party prose-
cutes another party for the enforcement or protection of a right,
the redress or prevention of a wrong or the punishment of a public
offense." The next section reads, "Every other remedy is a special
proceeding." It is not possible to misunderstand that language.
Every remedy is either a civil action, a criminal action, or a special

proceeding. A habeas corpus proceeding is a remedy. If it be a civil or criminal action, then, beyond question, it is appealable. If it be a special proceeding, then it comes directly within section 5626, Rev. Codes, which declares what orders are reviewable upon appeal, and the second subdivision of which reads, "A final order affecting a substantial right made in special proceedings." In my judgment, that exactly covers this case. But the majority opinion argues that it is not a special proceeding, because it is not placed in the Codes with certain other enumerated special proceedings of a purely civil nature, but, on the other hand, it is placed in the Code of Criminal Precedure. I find no force in the argument. The statute does not declare that special proceedings must be of a civil nature. It says, "Every other remedy is a special proceeding." I regard habeas corpus as more nearly of a civil than of a criminal character, yet, doubtless, the legislature, in placing it among the criminal procedure, regarded it as partaking of that character. As we have seen, it is so regarded in Wisconsin, and the same is true in Indiana. *Milligan* v. *State,* 97 Ind. 355. And in Kansas. *Gleason* v. *Commissioners,* 30 Kan. 53, 1 Pac. Rep. 384. And in Illinois. *Angell* v. *Union Co.,* 8 Ill. App. 244. But the location of the habeas corpus act can in no manner alter its inherent character. It is urged that this Court has held that there are remedies that are neither actions nor special proceedings. The first case cited is *State* v. *Davis,* 2 N. D. 461, 51 N. W. Rep. 942. There we simply held that the proceeding under review was not a remedy, and could not possibly, in that case, be used as a remedy, and hence was not a special proceeding, under the express definition in the statute. The second case is *Myrick* v. *McCabe,* 5 N. D. 422, 67 N. W. Rep. 143. It was a proceeding to remove from office. The syllabus in that case, prepared by Chief Justice Wallin, after citing the section authorizing the proceeding, declares: "Said section creates a remedy, and authorizes a proceeding which is summary in its nature, and of a character peculiar to itself. The statute which creates the remedy also establishes the practice which governs the proceeding to obtain the remedy. The statute does not contemplate that the proceeding shall be delayed by appeals from intermediate orders or rulings, and does not authorize any appeal before the entry of judgment." Certainly that case did not hold that the remedy was neither an action nor a special proceeding. The last case is In re Eaton, 7 N. D. 269, 74 N. W. Rep. 870. The case supports the proposition of the majority to some extent. The case was disbarment of an attorney, and resulted in the exoneration of the accused. The decision was written upon his application for judgment for costs. A provision of law allowed costs in special proceedings. If costs were allowed in that case, they could be taxed only against certain attorneys, who formulated the charges and conducted the proceedings, not of their own volition, but by express appointment and order of the District Court. To have mulcted them in costs would have been exceedingly inequitable and

unjust. To avoid a result so deplorable, we considered the proceeding so far sui generis that we excluded it from the classification of special proceedings. But certainly it would be entirely subversive of the statute to extend the reasoning of that case to habeas corpus proceedings.

But my associates base their ruling largely upon our habeas corpus statute, which they assert authorizes an application to this Court for the writ of habeas corpus after the writ has been issued by the District Court, a hearing had, and the petitioner remanded; thus ·enabling the petitioner to obtain in a speedy manner and without the necessity of an appeal, with its delays, the judgment of this Court upon the merits of his case. Here we diametrically differ. Section 8651, Rev. Codes, as amended by chapter 85, Laws 1897, reads: "The writ of habeas corpus must be granted, issued, and made returnable as hereinafter stated: (1) The writ must be granted by the Supreme Court or any judge thereof upon petition by or on behalf of any person restrained of his liberty within this state. When granted by the Court it shall in all cases be issued out of and under the seal of the Supreme Court, and may be made returnable, either before the Supreme Court, or before the District Court or any judge of the District Court. (2) The writ may be granted, issued, and determined by the District Courts and the judges thereof upon petition by or on behalf of any person restrained of his. liberty in their respective districts. When application is made to the Supreme Court, or to a judge thereof, proof by the oath of the person applying or other sufficient evidence shall be required that the judge of the District Court having jurisdiction by the provisions of subdivision 2 of this section is absent from his district or has refused to grant such writ, or for some cause to be specially set forth is incapable of acting, and if such proof is not produced the application shall be denied." That this section is an innovation, and intended as an innovation, upon the old practice is too clear for question. It strikes at once at the matter of repeated applications to courts of equal authority. A District Court, or the judge thereof, can only grant, issue, and determine the writ upon the petition of a party confined in that particular district. No other District Court or judge has any jurisdiction. So much is conceded in the majority opinion. But neither can a party come to this Court in the first instance as a matter of course. Certain facts must be shown. The judge of the District Court of the district where the petitioner is confined must be absent, or must refuse to act, or, for some cause to be specially set forth, must be incapable of acting. What incapacitates a judge? Sickness, consanguinity, affinity, or such personal interest in the result as makes it improper for him to act. These have always been held to disqualify. But the majority would ingraft another disqualification. They say, in · effect, that the petitioner must show to this Court that the judge of the proper District Court is absent, or has refused to act, or has acted. I humbly submit that the statute will bear no such con-

struction. Its every word presupposes that there has been no action in the District Court when the party comes to this Court, and that there can be no action there. Let me accept the construction of the majority for a moment, and see where it will lead. Let us suppose that a party confined in the first district presents his petition for a writ of habeas corpus to the Court in that district, and that the writ is granted, the matter heard, and the petitioner remanded. Now, under the holding of the majority, the petitioner can come to this Court with his petition, and an affidavit showing that the judge of the first district is incapable of acting because he has acted, and this Court must then issue another writ; and, as it may be made returnable before any District Court in the state, this Court will send it to the District Court for the second district. That court, in turn, remands the party. Upon the same showing he can come before us again, and obtain another writ, and continue the process until all the District Courts are exhausted; and this in the teeth of the statute, which it is admitted was passed expressly to prevent repeated hearings in the District Courts. I am entirely unwilling to prevert language from what seems to me its plain meaning, when it leads to such groesque results. But it is said that, if there be an appeal for one party, there must be an appeal for both, and that an appeal by the state acts as a supersedeas, and would prevent the execution of the order of discharge, and that this cannot be true, because a section of the habeas corpus act makes it an offense to rearrest a party who has once been discharged on habeas corpus. This argument is based upon a misapprehension of conditions. If the party has been discharged, then the appeal by the state cannot supersede the order. No appeal and no bond can supersede an order or judgment that has been fully executed. An appeal cannot incarcerate a man who is free. It can only prevent a man who is incarcerated from going free. But it is urged that even this enables the state, by taking an appeal before the order of discharge is promulgated, to defeat the purposes of the writ, and hold a party in confinement during a tedious appeal. If this be true, it is a practical objection to my position. I freely admit it, but I do not admit that it is a legal objection. Men find themselves grievously injured by the delays of litigation every day. But I do not concede this to be true. In Iowa, under an express statute giving an appeal to both parties in habeas corpus proceedings, the Supreme Court holds that the order of discharge cannot be superseded. This is in line with the general provisions which will not allow an appeal by the state in criminal proceedings to supersede a release or an acquittal by a Court or jury. Should such a case ever come before us, it might be our duty, in the interests of personal liberty, to hold that an appeal by the state did not supersede an order of discharge.

If it be claimed that my construction of the statute renders it unconstitutional, as unduly infringing upon the powers given to this Court to issue writs of habeas corpus, I answer that, while it is

entirely competent for the legislature to regulate and prescribe con-
stitutional powers thus conferred, yet that question is not before us
in this case, and cannot be.  We are concerned with the appeal
statute, and with this only as it bears upon that.  I simply contend
that, under our statutes as they stand, a party who has been re-
manded upon habeas corpus proceedings has a right to appeal to
this Court.

(77 N. W. Rep. 617.)